J-S73039-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD BALSAVAGE, | : | |
| | : | |
| Appellant | : | No. 691 MDA 2014 |

Appeal from the Judgment of Sentence entered on January 23, 2014
in the Court of Common Pleas of Berks County,
Criminal Division, No. CP-06-CR-0001210-2005

BEFORE:  BOWES, WECHT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED DECEMBER 18, 2014**

Richard Balsavage ("Balsavage") appeals from the judgment of sentence imposed on seven counts of sexual abuse of children,[1] following the revocation of his probation.  We affirm.

The trial court set forth the relevant factual and procedural history in its Opinion, which we adopt herein for purposes of this appeal.  **See** Trial Court Opinion, 7/23/14, at 2-6.

On appeal, Balsavage raises the following issues for our review:

1. Did the trial court err by increasing [Balsavage's] sentence and not overcoming or correcting the judicial vindictiveness that the trial court (by way of a different judge) earlier exhibited in the case?

2. Did the trial court's increasing of [Balsavage's] sentence punish [Balsavage] for previously exercising his right to

---

[1] **See** 18 Pa.C.S.A. § 6312(d) (child pornography).

allocution, which violates the standards set forth in the Pennsylvania Rules of Criminal Procedure and decisional law?

3. Did the trial court's increasing of [Balsavage's] sentence, without citing any new objective evidence of record, violate [Balsavage's] [d]ue [p]rocess rights under the United States Constitution?

Brief for Appellant at 9 (citations omitted).

Balsavage challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010); *see also Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997) (stating that, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal). Prior to reaching the merits of a discretionary sentencing issue,

[this Court conducts] a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

In the instant case, Balsavage filed a timely Notice of Appeal, preserved his claims in a timely post-sentence Motion, and included in his

appellate brief a separate Rule 2119(f) statement.[2]  As such, he is in technical compliance with the requirements to challenge the discretionary aspects of a sentence.  **Commonwealth v. Rhoades**, 8 A.3d 912, 916 (Pa. Super. 2010).  Thus, we will proceed to determine whether Balsavage has presented a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.  **See Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007).  "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either:  (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."  **Commonwealth v. Griffin**, 65 A.3d 932, 936 (Pa. Super. 2013) (internal quotation marks and citations omitted).

Challenges to the length of the sentence following resentencing, citing judicial vindictiveness, implicate a discretionary aspect of the sentencing process.  **See Commonwealth v. Tapp**, 997 A.2d 1201, 1202-03 (Pa. Super. 2010).  Accordingly, we grant review of Balsavage's claims and will address the merits of his argument.

As Balsavage's issues are related, we will address them together. Balsavage asserts that, because the sentences imposed by Judge Stephen

---

[2] In his Rule 2119(f) Statement, Balsavage disputes that his claims involve a challenge to the discretionary aspects of his sentence.  **See** Brief for Appellant at 26.

- 3 -

J-S73039-14

Lieberman ("Judge Lieberman") in 2007 ("the 2007 sentence")[3] and 2009 ("the 2009 sentence")[4] were reversed, we must look to the 2007 sentence as the basis from which to evaluate the sentence at issue, which was imposed by Judge Paul Yatron ("Judge Yatron") following the January 23, 2014 resentencing hearing ("the 2014 sentence").[5] *Id*. at 28-29. Balsavage contends that because no new evidence was presented at the January 23, 2014 resentencing hearing, there was no basis for Judge Yatron to increase Balsavage's sentence beyond the 2007 sentence. *Id*. at 29. Balsavage claims that Judge Yatron failed to acknowledge that the purpose of the January 23, 2014 resentencing hearing was for Balsavage to exercise his right of allocution, which had been denied by Judge Lieberman at the 2007

---

[3] Following Balsavage's admission to a probation violation of his original sentence, which was imposed in 2005, Judge Lieberman conducted a hearing pursuant to ***Gagnon v. Scarpelli***, 411 U.S. 778, (1973) ("***Gagnon II*** hearing") before imposing the 2007 sentence, which consisted of a prison term of 3½ to 7 years, followed by 42 years of probation.

[4] Following Balsavage's successful appeal of the 2007 sentence, Judge Lieberman conducted a second ***Gagnon II*** hearing before imposing the 2009 sentence, which consisted of a prison term of 24½ to 49 years, followed by 7 years of probation.

[5] Following Balsavage's successful Petition for a writ of *habeas corpus* regarding the 2009 sentence, Judge Yatron conducted a third ***Gagnon II*** hearing before imposing the 2014 sentence, which consists of a prison term of 4½ years to 24 years in prison, followed by 7 years of probation.

- 4 -

sentencing hearing.[6]  *Id*.  Balsavage asserts that Judge Yatron erred by regarding the January 23, 2014 resentencing hearing as a complete "do-over," and thereby failed to overcome the judicial vindictiveness exhibited by Judge Lieberman.[7] *Id*.

Balsavage further claims that a presumption of judicial vindictiveness applies to the 2014 sentence based on Judge Yatron's imposition of a sentence greater than the 2007 sentence.  *Id*. at 30.  Balsavage asserts that Judge Yatron violated his rights by effectively punishing him for successfully appealing his 2009 sentence, just as Judge Lieberman violated his rights when Balsavage appealed his 2007 sentence.  *Id*. at 31.  Balsavage also claims that Judge Yatron erred by conducting his resentencing on a *de novo* basis.[8]  *Id*. at 34.  Balsavage contends that Judge Yatron's justification for increasing his sentence, based on the fact that Balsavage took the subject

---

[6] In contrast to the position taken in Balsavage's appellate brief, his counsel asserted at the January 23, 2014 resentencing hearing that Balsavage did not wish to exercise his right of allocution, and that Judge Yatron should instead take into consideration the apology made by Balsavage at the 2009 resentencing hearing when imposing his sentence.  *See* N.T., 1/23/14, at 8, 12-13.

[7] In contrast to the position taken in Balsavage's appellate brief, his counsel asserted at the January 23, 2014 resentencing hearing that Judge Yatron's role was, in fact, to conduct a "do-over" of the 2009 resentencing hearing. *See* N.T., 1/23/14, at 8.

[8] In contrast to the position taken in Balsavage's appellate brief, his counsel agreed with Judge Yatron at the January 23, 2014 resentencing hearing that Judge Yatron's evaluation of the case should be "*de novo*."  *See* N.T., 1/23/14, at 4-5.

pornographic photos himself as opposed to obtaining them from the Internet,[9] does not constitute new objective evidence that would justify an increased sentence. *Id*. Balsavage asserts that, by failing to cite any new objective evidence as the basis for an increased sentence, Judge Yatron violated his due process rights under the United States Constitution. *Id*. at 35.[10]

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the United States Supreme Court recognized the possibility that a trial court's imposition of an enhanced sentence after retrial may be motivated by reasons personal to the judge, including vindictiveness toward the defendant for having secured relief from the original sentence on appeal. *See id*. at 725. Finding such motivation inimical to due process, the Court ruled that

---

[9] Balsavage admitted to taking the subject pornographic photographs, which depicted his ex-girlfriend's two-year-old son in a nude or semi-nude state with his genitals exposed, and in positions which suggested that he had been posed, for the purpose of using them to masturbate. *See* N.T., 6/16/05, at 3-4.

[10] Although Balsavage fails to specify which of his rights were violated by Judge Yatron when he imposed the 2014 sentence, Balsavage relies on a rescinded rule of criminal procedure, and corresponding case law, addressing a defendant's right of allocution at sentencing in support this argument. *See* Brief for Appellant at 31. However, our review of the January 23, 2014 resentencing hearing reveals that Judge Yatron twice afforded Balsavage his right of allocution, which Balsavage declined to exercise. *See* N.T., 1/23/14, at 8, 12-13. Moreover, Balsavage concedes that he elected not to exercise his right of allocution at the January 23, 2014 resentencing hearing. *See* Brief for Appellant at 29. Thus, to the extent that Balsavage claims that Judge Yatron denied him his right of allocution, such claim is without support in the record.

[i]n order to assure the absence of such a motivation, . . . whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*Id.* at 726. Clarifying this holding in subsequent decisions, the Court recognized that **Pearce** applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence. **See Alabama v. Smith**, 490 U.S. 794, 798-99 (1989).

However, the **Pearce** requirements do not apply in every case where a convicted defendant receives a greater sentence upon resentencing. **See Texas v. McCullough**, 475 U.S. 134, 138 (1986). Relevantly, the presumption of judicial vindictiveness does not apply where the enhanced sentence imposed upon resentencing was imposed by a sentencing authority *different* from the one that imposed the earlier sentence. **See id**. at 138-39 (stating that, where the sentencer is not the same in the two proceedings, the sentencer imposing the second sentence has no personal stake in the prior conviction and no motivation to engage in self-vindication, rendering the threat of vindictiveness far more speculative than real).

Additionally, when different sentencers have assessed the varying sentences that a defendant has received, "a sentence 'increase' cannot truly be said to have taken place." **McCullough**, 475 U.S. at 140; **see also id**. (explaining that "[it] may often be that the [second sentencer] will impose a

punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty." (quoting **Colten v. Kentucky**, 407 U.S. 104, 117 (1972)).

In Pennsylvania, no presumption of vindictiveness arises when sentences have been imposed by two different judges. **See Tapp**, 997 A.2d at 1205. In the absence of a presumption of vindictiveness, the defendant must affirmatively prove actual vindictiveness. **Id**. When a defendant makes no attempt to prove vindictiveness by affirmative evidence, his right to due process has not been infringed, and he is not entitled to be resentenced. **See id**.

Here, because Balsavage was resentenced in 2014 by a *different* judge than the judge who sentenced him in 2007, the presumption of judicial vindictiveness does not apply.[11] **See id**. Additionally, because Balsavage's

---

[11] In support of his claim that judicial vindictiveness applies to the 2014 sentence, Balsavage relies on the Opinion entered by the federal district court in **Balsavage v. Wetzel**, 936 F. Supp. 2d 505 (E.D. Pa. 2013), affirmed in part, vacated in part, remanded, 545 Fed. Appx. 151 (3d Cir. 2013). **See** Brief for Appellant at 32-34. However, the issue before the district court was whether the presumption of judicial vindictiveness applied to the 2009 sentence, which involved an increased sentence imposed by the *same* judge (*i.e.*, Judge Lieberman) who had imposed the 2007 sentence. Thus, because the *same* judge imposed both of those sentences, the district court determined that the presumption of judicial vindictiveness applied to the 2009 sentence, requiring the identification of objective information in the record to justify the increased sentence. Because no presumption of judicial vindictiveness applies to Balsavage's 2014 sentence, the **Pearce** requirement that new objective evidence be presented to justify the increased sentence does not apply.

sentences were imposed by different judges, there has been no "increase" in his sentence. *See McCullough*, 475 U.S. at 140 (stating that where a different judge imposes the second sentence, no sentence "increase" has occurred). Indeed, it no more follows that the 2014 sentence imposed by Judge Yatron is a vindictive penalty for Balsavage's pursuit of a writ of *habeas corpus* than that the 2007 sentence imposed by Judge Lieberman was too a lenient penalty. *See id*.; *see also Tapp*, 997 A.2d at 1205.

Although a defendant may seek to establish judicial vindictiveness by affirmative evidence, Balsavage has presented no evidence of actual vindictiveness, and nothing in the record suggests that Judge Yatron was motivated by vindictiveness. Accordingly, Balsavage's claim of judicial vindictiveness, resulting in a due process violation, must fail under both federal and Pennsylvania state law.

The standard of review applicable to resentencing following the revocation of probation applies to the 2014 sentence:

> In general, the imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. Our standard of review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Once probation has been revoked, a sentence of total confinement may be imposed if any of the following conditions exist: (1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or, (3) such a sentence is essential to vindicate the authority of court.

***Commonwealth v. Edwards***, 71 A.3d 323, 327 (Pa. Super. 2013)
(citations omitted); ***see also*** 42 Pa.C.S.A. § 9771.

Here, the record reflects that Judge Yatron reviewed ample testimony
and numerous documents, which led him to conclude that the 2014 sentence
he imposed was justifiable and necessary in this case. Specifically, Judge
Yatron had the benefit of extensive evidence of Balsavage's likelihood to
reoffend, including the testimony of Balsavage's probation officer, cellmate,
two sex offender therapists, and a sex offender treatment specialist who
prepared a Treatment Summary of Balsavage's treatment while he was on
probation. ***See*** Trial Court Opinion, 7/23/14, at 2. Judge Yatron also had
the benefit of evidence regarding Balsavage's (1) admission that he had
victimized twelve additional minor victims; (2) struggles with pedophilia
fantasies, to which he sometimes masturbates, and a sexual interest in
urophilia and coprophilia; (3) addiction to marijuana and alcohol; and (4)
fantasies about doing something like the Amish schoolhouse murders. ***See
id***.

Additionally, Judge Yatron had available to him the same sentencing
alternatives that were available to Judge Lieberman at the 2007
resentencing hearing. ***See Edwards***, 71 A.3d at 327. Notably, Balsavage
does not challenge the legality of the individual sentences which comprise
the 2014 sentence, or the fact that those sentences were imposed
consecutively. Having reviewed the record, we find no error and discern no

abuse of discretion regarding the 2014 sentence. Accordingly, we affirm Balsavage's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2014

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | : | OF BERKS COUNTY, PENNSYLVANIA |
| | : | CRIMINAL DIVISION |
| v. | : | |
| | : | No. CP-06-CR-0001210-2005 |
| RICHARD BALSAVAGE, | : | |
| Defendant | : | PAUL M. YATRON, PRESIDENT JUDGE |

Melissa Noyes, Esq., Attorney for the Commonwealth
Osmer S. Deming, Esq., Attorney for the Appellant on Appeal

---

**1925(a) Opinion**                                                          **July 22, 2014**

Richard Balsavage ("Appellant") pled guilty to eight counts of sexual abuse of children[1] on May 23, 2005. Appellant was sentenced to nine (9) to twenty-three (23) months' imprisonment. After his release from prison, Appellant quickly violated the terms of his probation. A lengthy procedural history ensued, which is detailed *infra*. This Court resentenced Appellant on January 23, 2014. Appellant filed a notice of appeal on April 21, 2014. We ordered the filing of a concise statement of errors pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, and Appellant filed a timely concise statement.

Defendant raises the following matters for appellate review:

1. Did the trial court err by increasing the Defendant's sentence and not overcoming or correcting the judicial vindictiveness that the trial court (by way of a different judge) earlier exhibited in this case?

2. Did the trial court's increasing of the Defendant's sentence punish the Defendant for previously exercising his right to allocution, which violates the standards set forth in the Pennsylvania Rules of Criminal Procedure and decisional case law? See Pa.R.Crim.P. 1409(c)(1); Commonwealth v. Thomas, 553 A.2d 918, 919 (Pa. 1989); Commonwealth v. Barzyk, 692 A.2d 211, 215 (Pa.Super. 1997); and Commonwealth v. Tigney, 730 A.2d 968 (Pa.Super. 1999).

---

[1] 18 Pa. C.S.A. § 6312(d).



3.  Did the trial court's increasing of the Defendant's sentence, without citing any **new objective evidence of record**, violate the Defendant's Due Process rights under the United States Constitution?

4.  Did the trial court's increasing of the Defendant's sentence, without citing any **new objective evidence of record**, violate the decisions of both <u>Balsavage v. Wetzel</u>, 936 F. Supp. 2d 505, 2013 WL 1148398 at *9 (E.D. Pa., March 20, 2013) and <u>Balsavage v. Wetzel</u>, 545 Fed. Appx. 151, 2013 WL 6044291 (3d Cir. 2013)?

CONCISE STATEMENT, APR. 29, 2014.

## Factual Summary and Procedural History

The United States District Court for the Eastern District of Pennsylvania usefully summarized the facts and procedural history relevant to the instant appeal:

> On May 23, 2005, Balsavage pled guilty to eight counts of sexual abuse of children, in violation of 18 Pa. Cons. Stat. Ann. § 6312(d). Specifically, Balsavage admitted to knowingly possessing eight photographs of his girlfriend's son, who was approximately two years old, posing in the nude or partially nude. On September 13, 2005, the Original Sentencing Judge sentenced Balsavage to a term of 9 to 23 months of incarceration on Count I, followed by a total of 7 years of probation for Counts II through VIII.
>
> On December 20, 2006, Balsavage completed his sentence on Count I and began serving his 7 year period of probation on Counts II through VIII. Shortly after his release, Balsavage violated his probation. On May 21, 2007, at the initial proceedings for his Gagnon II Hearing, Balsavage admitted to one violation of probation, for viewing pornography. The Gagnon Judge was a different judge than the Original Sentencing Judge.
>
> A few days later, on May 31, 2007, the Gagnon Judge conducted an extensive Gagnon sentencing hearing to determine the appropriate sentence for Balsavage in light of his probation violation. The Gagnon Judge heard the most damning testimony from Balsavage's probation officer, his cellmate, two sex offender therapists, and a sex offender treatment specialist. The Gagnon Judge relied upon a Treatment Summary that was prepared by the sex offender treatment specialist that summarized Balsavage's treatment while he was on probation. This Treatment Summary was discussed at length during the hearing, and the Gagnon Judge admitted it into evidence.
>
> At the Gagnon sentencing hearing, the Gagnon Judge learned an abundance of information about Balsavage's sex offender treatment history, his mental disorders, and his capacity for rehabilitation. The Gagnon Judge learned that Balsavage admitted to: (1) victimizing twelve additional minors and provided intimate details of these victimizations; (2) ongoing struggles with pedophilia fantasies to which he sometimes masturbated, and a sexual interest in urophilia and coprophilia; (3) an addiction to marijuana and alcohol that began at age

2

twelve; and (4) fantasies about doing something like the Amish schoolhouse murders. Several witnesses relayed these admissions to the Gagnon Judge, and the Treatment Summary explicitly detailed each of Balsavage's admissions. After learning this information, the Gagnon Judge concluded that Balsavage is "not amenable to treatment."

[I]n closing, the Commonwealth argued to the Gagnon Judge that the testimony of the witnesses led to the conclusion "that [Balsavage] is at a high risk of reoffending, that he is a danger to the community, and that at this time total confinement is necessary...." Based on the evidence presented of Balsavage's ongoing deviant thoughts, which he continued to act upon, the Gagnon Judge concluded: "[O]nly total confinement for a lengthy period of time will afford the community at large any hope of real protection from [Balsavage's] predatory behavior. And I believe that lengthy incarceration followed by lengthy supervision is also necessary to make sure that Mr. Balsavage continues to comply with treatment and to conform his behavior to societal norms." The Gagnon Judge substantially increased Balsavage's original sentence of 9 to 23 months of imprisonment, followed by 7 years of probation, and sentenced Balsavage to 3 ½ to 7 years of imprisonment, followed by 42 years of probation. The Gagnon Judge emphasized that this was a "very lengthy sentence. It may for Mr. Balsavage end up being a life sentence, but at least until he's a very elderly man." The Gagnon Judge justified this lengthy increase based on the need to protect minor children, protect the community, and rehabilitate Balsavage to prevent him from reoffending.

Balsavage appealed and the Pennsylvania Superior Court, without commenting on the propriety of the sentence, affirmed the sentence on March 12, 2008, 953 A.2d 593 (Pa.Super.2008). On August 4, 2008, Balsavage filed for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa. Const. Stat. Ann. §§ 9541–46. In his PCRA petition, Balsavage alleged that he was denied his right of allocution during the May 31, 2007 Gagnon sentencing hearing. On April 17, 2009, the Gagnon Judge granted Balsavage's PCRA petition based solely on the denial of the right to allocution and ordered a Gagnon resentencing hearing.

On May 27, 2009, the Gagnon Judge held the Gagnon resentencing hearing. While the Gagnon Judge acknowledged that he had reviewed an amended presentence investigation report, the Gagnon Judge himself noted that "[t]here's very little that—virtually nothing that's new or different from the time of the prior sentencing .... Obviously, nothing has changed except Mr. Balsavage has been incarcerated this entire period of time." At the beginning of the Gagnon resentencing hearing, Balsavage addressed the court and stated that he took full responsibility for his wrongs and was truly sorry for what he had done. Following this statement, the Gagnon Judge proceeded to question Balsavage, who was not under oath, about information that had been given to the Gagnon Judge at Balsavage's original Gagnon sentencing hearing on May 31, 2007. Specifically, the Gagnon Judge asked Balsavage questions about his admissions to his sex offender treatment specialist contained in the Treatment Summary and about the allegation that Balsavage had fantasies about the Amish schoolhouse murders. No witnesses testified at the Gagnon resentencing hearing, no testimony under oath

3

was given, and no exhibits were considered. Moreover, no new, or newly discovered, information was presented at the Gagnon resentencing hearing.

At the conclusion of the Gagnon resentencing hearing, the Gagnon Judge repeated what he had said at the original Gagnon sentencing hearing, that Balsavage's probation violation merited "a very lengthy resentencing." As justification for this lengthy sentence, the Gagnon Judge explicitly relied on "the fact that you appealed every decision and sentence this Court ever imposed on you." Among the other factors the Gagnon Judge considered were Balsavage's history, his high risk of recidivism, his lack of remorse, and his inability to comply with probation, all of which led the Gagnon Judge to conclude that the maximum sentence was "absolutely required to protect the most vulnerable members of our community." The Gagnon Judge then sentenced Balsavage to 24 ½ to 49 years of imprisonment, a term of imprisonment that was seven times longer than Balsavage received at the original Gagnon sentencing hearing. As justification for this new "lengthy sentence" the Gagnon Judge told Balsavage: "It is, obviously, this Court's intention to keep you in custody and away from any minor children and to protect the members of the community for as long a period of the time as is available to this Court."

Because the Gagnon Judge resentenced Balsavage to a term outside the guidelines adopted by the Pennsylvania Commission on Sentencing, the Gagnon Judge had to "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission." In his § 9721(b) statement, the Gagnon Judge explained that he resentenced Balsavage outside the guidelines for "the protection of the public," to address the "gravity of the offenses," and "the rehabilitative needs, or in this case the prospect of rehabilitation, of the Defendant." The Gagnon Judge based his sentencing decision on Balsavage's failure to comply with probation and the information he had learned from the Treatment Summary; specifically, Balsavage's admissions that he had twelve other victims and struggled with pedophilia fantasies to which he sometimes masturbated, as well as the report's conclusion that Balsavage had a high risk of recidivism. The Gagnon Judge concluded that Balsavage needed the maximum period of incarceration in order to protect minors in the community. In sum, the Gagnon Judge used the same facts and justifications relied upon at the original Gagnon sentencing hearing to increase Balsavage's period of incarceration sevenfold.

Balsavage filed a Post–Sentence Motion to Modify Sentence, which was denied by the Gagnon Judge on June 15, 2009. Balsavage then appealed his sentence. On May 13, 2010, 4 A.3d 191 (Pa.Super.2010), the Pennsylvania Superior Court affirmed Balsavage's judgment of sentence without addressing Balsavage's claim that his sentence violated his due process rights as articulated in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Balsavage filed a Petition for Allowance of Appeal. On September 27, 2010, 608 Pa. 614, 8 A.3d 340 (2010), the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal.

4

*Balsavage v. Wetzel*, 936 F. Supp. 2d 505, 508–11 (E.D. Pa. 2013) (citations omitted), *aff'd in part, vacated in part, remanded*, 545 F. App'x 151 (3d Cir. 2013).

Thereafter, Appellant filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. Appellant argued that his sentence was the product of judicial vindictiveness, therefore violating his due process rights under *North Carolina v. Pearce*, 395 U.S. 711 (1969). The District Court agreed, and it conditionally granted Appellant's petition. The Court ordered that a writ of habeas corpus would issue unless Appellant was resentenced within 120 days to his original term of imprisonment— 3.5 to 7 years. *Id.* at 519.

The District Court reasoned that Appellant "has objectively proven that the Gagnon Judge's sole reason for increasing his sentence was to penalize him for exercising a guaranteed legal right. Thus, he has proven actual vindictiveness and established that his increased sentence violates due process." *Id.* at 518. The Court also wrote that Appellant could have also established a due process violation without the showing of actual vindictiveness; though no new objective evidence was presented on the record, the Gagnon Judge increased Appellant's sentence sevenfold after his successful appeal. *Id.*

The Berks County District Attorney appealed the District Court's decision, and the Third Circuit conducted a plenary review of Appellant's petition. The Court agreed that Appellant had met his evidentiary burden and that his current sentence was the product of judicial vindictiveness. *Balsavage v. Wetzel*, 545 F. App'x 151, 156 (3d Cir. 2013). The District Court's remedy, however, was found to violate principles of federalism: "Because it is possible that [Appellant] could be resentenced above his original sentence in a manner that comports with due process, we conclude that imposing a cap on [Appellant's] new sentence would impermissibly limit the state court's exercise of sentencing discretion and exceed the federal court's authority to act on the body of a habeas petitioner." *Id.* The Court also noted its applicable precedent "describing the relief permissible under § 2254 provides that a habeas court should not interfere with the state criminal process more than is necessary to ensure compliance with constitutional law." *Id.* at n.7 (citing *McKeever v. Warden SCI–Graterford*, 486 F.3d 81, 85 (3d Cir. 2007); *Dickerson v. Vaughn*, 90 F.3d 87, 92 (3d Cir. 1996); *Barry v. Brower*, 864 F.2d 294, 301 (3d Cir. 1988)).

Subsequent to these federal decisions, the original Gagnon Judge recused himself, and Appellant's case was reassigned to this Court. We held a sentencing hearing on January 23, 2014. The hearing included a lengthy discussion regarding which evidence this Court was entitled to consider in imposing its sentence. *See* NOTES OF TESTIMONY ("N.T."), January 23, 2014 at 5–13. In fashioning a sentence, we took into account the various documents connected to this case, including transcripts of the three proceedings, orders of the courts, and the miscellaneous judicial opinions. *Id.* at 15. We also noted the underlying circumstances of Appellant's original case:

> There were, of course, a number of things that are very unusual about this case, predominantly, of course, the procedural posture and the tortured path it has taken to getting here today. But it was also very unusual in that the charge that the Defendant faces, ordinarily, in the run-of-the-mill case, consists of photographic images that people acquire over the Internet, sometimes by accessing sites, other times by directly receiving them from someone, whereas in this case, the images that were the subject of the 8 counts against the Defendant were taken by the Defendant himself of this very young child.

*Id.* at 13–14. Based on these factors, we imposed an aggregate sentence of fifty-four (54) months to twenty-four (24) years of incarceration, followed by seven (7) years' probation.

## Discussion

Appellant makes several related claims challenging the propriety of the sentence imposed by this Court. First, Appellant contends that we erred by increasing Defendant's sentence and not overcoming or correcting the judicial vindictiveness that the trial court—by way of a different judge—earlier exhibited in this case. CONCISE STATEMENT at ¶1. Second, Appellant also contends that our increasing of Defendant's sentence was a form of punishment for Defendant's previous exercising his right to allocution. *Id.* at ¶2. Third, Appellant contends that this Court, by increasing Defendant's sentence without citing any new objective evidence of record, violated Defendant's Due Process rights afforded by the United States Constitution. *Id.* at ¶3. Finally, Appellant contends that this Court's increasing of Defendant's sentence, without citing any new objective evidence of record, violated the decisions of both *Balsavage v. Wetzel*, 936 F. Supp. 2d 505 (E.D. Pa. 2013) and *Balsavage v. Wetzel*, 545 Fed. Appx. 151 (3d Cir. 2013). *Id.* at ¶4.

The starting point for all these claims is the United States Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711 (1969). *Pearce* held that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play

6

no part in the sentence he receives after a new trial." *Id.* at 726. To ensure the absence of vindictiveness, a judge imposing a more severe sentence after a new trial must affirmatively state "the reasons for his doing." *Id.* The Court subsequently refined the *Pearce* standard:

> The presumption of vindictiveness "may be overcome only by objective information in the record justifying the increased sentence," *Goodwin,* 457 U.S. at 374, 102 S.Ct. 2485, that sheds "new light upon the defendant's life, health, habits, conduct, and mental and moral propensities." *Pearce,* 395 U.S. at 723, 89 S.Ct. 2072. This information includes both "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," *id.* at 726, 89 S.Ct. 2072, and newly discovered information about conduct that occurred before the original sentencing that objectively supports an increased sentence. *See Texas v. McCullough,* 475 U.S. 134, 141, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986).

*Balsavage,* 545 F. App'x at 154–55. Accordingly, the main goal of the applicable precedents is to avoid judicial vindictiveness. Evident vindictiveness may be remedied by the objective consideration of new evidence.

The posture of this case presents a challenge because this Court only became involved at Appellant's most recent sentencing. Our separation from the initial proceedings necessarily affects the analysis of due process and judicial vindictiveness. The Supreme Court has acknowledged this reality in the context of retrials. *Texas v. McCullough* involved a situation in which sentences had been imposed by multiple judges:

> In such circumstances, a sentence "increase" cannot truly be said to have taken place. In *Colten v. Kentucky,* . . . , which bears directly on this case, we recognized that when different sentencers are involved, "[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty." *Id.,* 407 U.S., at 117, 92 S.Ct., at 1960. Here, the second sentencer provides an on-the-record, wholly logical, nonvindictive reason for the sentence. We read *Pearce* to require no more particularly since trial judges must be accorded broad discretion in sentencing, see *Wasman, supra,* 468 U.S., at 563–564, 104 S.Ct., at 3220–3221.

475 U.S. 134, 140 (1986). The Court's analysis in *McCullough* "reflects its recognition that where the sentencer is not the same in the two proceedings, the sentencer imposing the second sentence has 'no personal stake in the prior conviction and no motivation to engage in self-vindication[,]' rendering the threat of vindictiveness far more speculative than real." *Commonwealth v. Tapp,* 997 A.2d 1201, 1204 (Pa. Super. 2010) (citing *McCullough,* 475 U.S. at

7

139 (citations omitted)). Though *McCullough* and *Colten* concerned retrials, they both confront the reality of multiple judges imposing sentence in the same case. In such situations, the second judge generally should retain the broad sentencing discretion that he would ordinarily be afforded.

Critically here, the Third Circuit explicitly provided that Appellant "could be resentenced above his original sentence in a manner that comports with due process." This contravenes Appellant's apparent stance that this Court was obligated to merely re-impose the sentence from his first Gagnon hearing. Concerning that initial hearing, the Third Circuit noted, "the only change between the original sentencing and the resentencing was that [Appellant's] responses to the sentencing judge's queries corroborated some of the facts on which the Gagnon court relied in imposing the original sentence." *Balsavage*, 545 F. App'x at 155. Appellant's most recent sentencing hearing remedied this problem. We expressly considered the unusual and troubling circumstances of the underlying case, namely that the photographs in question had been taken by Appellant himself. This evidence was not considered at Appellant's initial Gagnon hearing. Before imposing sentence at that hearing, the judge placed his rationale on the record:

> The Court really does not need nor do the parties really have to overcomplicate the situation. [Appellant], after serving a jail sentence on Count 1, was released on probation, specifically with probation conditions that he participate in treatment programs specifically including sex offender therapy as required by the supervising officer which was the Berks County Probation Office. He was out on probation for only several months. He was aware of the specific terms. He, by his own admission, violated the specific condition of his sex offender therapy treatment by viewing pornography while—I guess it was online. And that was by his own admission to both the treatment counselor, to the probation office, and to this Court at our last hearing.
>
> The sentencing guidelines and the structure of sentencing in this Commonwealth and basically in this country pursues two goals. First is the rehabilitation of the defendant, hopefully to give them the tools that they will need to prevent them from reoffending, becoming law abiding, productive citizens of this Commonwealth. The second goal is not second in order of importance; but, again, the sentencing guidelines and the sentencing scheme and the sentencing statute indicates that along with the goal of rehabilitation, the protection of the community is of paramount concern.
>
> [Appellant], even though he divulged information during his therapy about ongoing deviant thoughts, also indicated that he continued to act on those thoughts by masturbating to various deviant sexual fantasies that occurred while he was on probation; and this behavior was disclosed to the Berks Counseling

8

therapist. And this was ongoing from the time that he was actually being treated at Berks County Prison.

. . .

This Court is committed to protecting minor children, and the Court is committed to protecting the community. [Appellant] through his ongoing deviant fantasies, acting out on them, and specifically violating the terms and conditions of his sex offender therapy, which was a Court Ordered condition of his probation, believes that only total confinement for a lengthy period of time will afford the community at large any hope of any real protection from his predatory behavior. And I believe that lengthy incarceration followed by lengthy supervision is also necessary to make sure that [Appellant] continues to comply with treatment and to conform his behavior to societal norms.

Accordingly, I would also note that the Berks County Probation Office and the County of Berks has offered everything that is available to this particular Defendant as far as treatment alternatives. A significant amount of time, resources, energy, and money have been spent on [Appellant] to no avail, and I believe that accordingly a state sentence is warranted. Hopefully through the State Department of Corrections and then through the State Department of Parole and Probation there'll be other services that may be available to [Appellant] that will give him the tools that he will need to finally be able to have his behavior conform with the law and with our community's expectations.

N.T., May 23, 2005 at 69–72.

The nature of the underlying charges was plainly unstated as a factor in the original imposition of sentence. By considering such evidence, this Court entered new objective information in the record to justify Appellant's increased sentence. As such, the sentence did not evince any degree of vindictiveness; this Court was considering the case for the very first time, and we were entitled to consider the nature of the underlying charges in the initial case. To require otherwise would strip sentencing courts of all flexibility, restricting our ability to sensibly analyze a case in its whole. Accordingly, we respectfully submit that our sentence exhibited no vindictiveness or intent to punish Appellant for his allocution, and that the sentence comported with due process and the edicts of the federal opinions in this case.

## Conclusion

For all of the foregoing reasons, this Court requests that the instant appeal be DENIED and the judgment of sentence AFFIRMED.

9